# PROVISIONAL GOVERNMENT OF THE HAWAIIAN ISLANDS *vs.* CHARLES AUGUST HERING.

## EXCEPTIONS.

HEARING, JUNE 27, 1893.                    DECISION, JULY 24, 1893.

### JUDD, C.J., BICKERTON AND FREAR, JJ.

1. A charge in the District Court in these words held sufficient— "Defendant is charged with murder in the first degree, in that he did at Honolulu, Oahu, on the 18th day of March, 1892, make a murderous assault with a loaded pistol upon one D. L. Huntsman, in consequence of which said assault the said D. L. Huntsman died on the morning of March 20th, 1892;" the Magistrate having corrected in his mittimus of committal the year 1892 to 1893.

2. It was proper practice to name the Provisional Government of the Hawaiian Islands as the prosecuting party.

3. The validity of the appointment of Judge Cooper who presided at the trial, was settled by this Court in a decision rendered June 27th, 1893, on the question raised as to the validity of Mr. Justice Frear's appointment—both appointments resting upon the same law.

4. An indictment charging that the person killed was "one D. L. Huntsman" held to be not bad, as the Court in the absence of evidence will not presume that he has any Christian name other than such letter or letters. The presumption that every person has a Christian name does not obtain in this country.

5. An indictment charging in one count murder, without designating the manner and means of death as authorized by statute is not bad for duplicity when a second count is inserted giving the particulars of such offense.

6. A demurrer to the indictment having been overruled and exceptions taken thereto, it was not error to proceed with the trial, pending the hearing on the exceptions.

7. The defendant stood mute, and refused to plead. It was proper by statute (Section 36, Crim. Procedure Act, p. 348, Compiled Laws) to enter a plea of "not guilty."

8. It was not error to allow a Magistrate to read from his notes of evidence of a witness taken down in the preliminary examination, from

an interpreter, the evidence having been given in the Hawaiian language, the interpreter having been sworn as a witness and giving his own statement of what the witness had said, the two statements agreeing substantially.

9. The deceased, a few hours before his death from certain pistol-shot wounds, said good-bye to his friend, and on being told by him that he would call and see him in the morning, replied: "I don't think you will see me in the morning." Deceased also gave his books to a friend and requested that his trunk, containing his clothing and other personal effects, be sent to his mother at Haley, in Idaho, U. S. A. Held satisfactory evidence that deceased believed he was about to die, and his statements then made as to who his assailant was and as to other circumstances, were properly admitted as "dying declarations."

10. This admission is not prohibited by the Constitution. Art. 7.

11. The burden does not rest upon the prosecution of showing, where the wound is adequate to produce death, that the medical treatment was skillful, and did not in any way contribute to the death, or that deceased had no latent disease or ailment to which his death might be attributable. Where the wound caused by defendant is adequate and calculated to produce death, neglect or maltreatment will not excuse defendant.

12. It was not error for the Court to pass sentence for manslaughter in the second degree, on a written verdict in the Hawaiian language finding the defendant guilty of manslaughter in the second degree, the character for "second" being the figure 2.

## OPINION OF THE COURT, BY JUDD, C.J.

The jury at the May Term, 1893, of the Circuit Court, First Circuit, found the defendant guilty of manslaughter in the second degree upon an indictment charging him with the murder of one D. L. Huntsman, and he was duly sentenced. A bill of exceptions was allowed defendant to the Supreme Court.

The various points raised will be stated and discussed in order. The first is the plea to the jurisdiction—in which defendant contends (first) that he was not charged, examined or committed for the murder of D. L. Huntsman as set forth in the indictment. The charge made in the District Court was as follows: "Defendant is charged with murder in the first degree, in that he did at Honolulu, Oahu, on the 18th

day of March, 1892, make a murderous assault with a loaded pistol upon one D. L. Huntsman, in consequence of which said assault the said D. L. Huntsman died on the morning of March 20th, 1892." No plea was made, and, after hearing the evidence, the magistrate committed defendant for trial at the Circuit Court of the First Circuit upon the charge above set forth, reciting it as made by the prosecution "except that said magistrate finds that the dates in said charge should be March 18th, 1893, and March 20th, 1893, and that the acts alleged and proven occurred respectively on those last named dates." We are of opinion that the charge was sufficiently full and accurate. It charged defendant with murder in the first degree and specified the method of killing, the date and place of the murderous assault, the name of the person killed and the date of his death. The correction made by the magistrate of the year 1892 to 1893 was to set right an evident clerical error and does not vitiate the charge. The second point attacks the validity of the appointment of Circuit Judge Cooper who presided at the trial of this case in the Circuit Court. In a preliminary objection to the sitting of Mr. Justice Frear in this case the same question was raised, and we refer to our opinion rendered on the 27th June last overruling the objection as decisive of this point against the defendant's contention. The defendant, the plea to the jurisdiction having been overruled by Judge Whiting and excepted to, demurred to the indictment and raised the question (third) whether there is any authority of law for the adoption of the name of the Provisional Government of the Hawaiian Islands as the prosecuting body. There is no statute designating in what name processes, warrants or indictments should be entitled. Under the monarchy it was customary, but not invariably so, to entitle them in the name of the reigning sovereign. And this was proper as criminal prosecutions were by the Crown which represented the State. On the change of Government in January last, this Court ordered the processes of Court to be entitled "in the name of the Provisional Government of the Hawaiian

Islands," which was equally proper as indicating the authority for instituting criminal prosecutions. In a republic the proper form would be "In the name of the people of the————" naming the State.

Fourth. The demurrer alleges that "the indictment does not with sufficient certainty designate and identify any person whom this defendant is therein alleged to have killed and murdered." The indictment charges that defendant "did kill and murder one D. L. Huntsman," and it is contended by defendant's counsel that this is a fatal defect—that to describe the person assailed not by his Christian name but by initials and surname is insufficient. The early English cases to which we are referred, show that the letter of the alphabet, which is a vowel, may be the name of a person, and there is contrariety in the cases upon the question whether one of these letters, which is a consonant, can constitute a name. In *Tweedy vs. Jarvis*, 27 Conn., 42, the Court held that a consonant may be presumed to be an entire Christian name as well as a vowel. The object, however, of naming the deceased in an indictment of this character is to identify him and to admit proof that the person killed was the one named in the indictment. As Wharton, in his Crim. Evidence, Sec. 99, says, "The real question is, what did the defendant call himself, and permit himself to be called? By this name he is to be indicted. If he calls himself by initials and signs his name by initials, by initials he may be described in an indictment." *Vandermark et al. vs. the People*, 47 Ill., 722, sustains this view. The Court say, "It is said that the full Christian name of the prosecuting witness should have been given, and that the initials were not sufficient. It is a rule of pleading that the name of the person receiving the injury, when known, must be set out in the indictment, that the accused may know of what particular offense he is charged. But when the person is described by the initials of his Christian name, and he is as well known by that as his full name, the object of the rule is obtained, and no error is committed.

And it was a question for the jury whether he was known in the community as well by that as his full name."

There are many cases which take the ground that an indictment against a man by the initials of his Christian name only is subject to plea in abatement, unless the grand jury add that his name is unknown to them otherwise than is set out. *U. S. vs. Upham*, 43 Fed. R., 68; *Zellers vs. The State*, 7 Ind., 659. In this last case as well as in many others the courts say that "every person is presumed to have a Christian name"—and this seems to be the foundation for the rule that it should be set out in full. But in this country with a population consisting of many different races, many of whom are not Christian, and who therefore do not have Christian names, and with an aboriginal population among whom the adoption of Christian names is of but recent origin and not universal, it cannot be truthfully said that such presumption exists. We are unwilling to take the extreme view that an indictment for murder is demurrable because the name of the person killed was not set out in full, but by initials only.

In *Wade vs. State*, 4 S. W. Rep., 896, a person was convicted of the murder of "Smutty my darling." The Court say, "If the name of the deceased, as alleged in the indictment, was the name of a human being, and it was this identical human being that was killed, it can make no difference that the name is an unusual one." The statement of the later law upon this subject we take from 16 Amer. & Eng. Encyclop. Law, p. 116, "When a party or third person is designated in a pleading, warrant or indictment by a surname preceded by one or more capital letters only, the Court, in the absence of evidence, will not presume that he has any Christian name other than such letter or letters." We do not understand that there was any proof shown to the jury that the person killed was known by the community or denominated by himself by any other name than that by which he was described in the indictment, to wit, "D. L. Huntsman." The only evidence

on this point being that in an application for letters of denization he is described as Dow Lee Huntsman, but to this deceased signed his name as "D. L. Huntsman."

Fifth. The indictment is alleged to be objectionable, on the ground of duplicity, in that it purports to set out several offenses of different character and degree and as having been committed on different dates, and contravenes the form of the statute in such case made and provided."

The indictment charges that Charles August Hering, a native Hawaiian by birth, of Honolulu, in the island of Oahu, at Honolulu, in the island of Oahu, and within the jurisdiction of this Honorable Court, on the eighteenth day of March in the year of our Lord one thousand eight hundred and ninety-three, with force and arms feloniously, willfully and of his deliberate premeditated malice aforethought did kill and murder one D. L. Huntsman, and did then and there and thereby commit the crime of murder in the first degree, contrary to the form of the statute in such case made and provided. Then follows another count specifying substantially the shooting by the defendant of Huntsman, on the 18th of March, with a pistol, and thereby inflicting mortal wounds of which Huntsman did suffer and languish, and languishing did live to the 20th of March, when he died. By the authority of Sec. 18 of the Criminal Procedure Act, p. 342, Compiled Laws, the first count would be sufficient. This statute says that " it shall not be necessary to set forth the manner in which or the means by which the death of the deceased was caused, but it shall be sufficient in any indictment for murder to charge that the defendant did feloniously, willfully and of his malice aforethought kill and murder the deceased." The statutory essentials were strictly followed, adding only the ingredient made necessary by the Act of 1890, Chap. LXXI., that the malice was " deliberate premeditated," in order to charge murder in the first degree. The addition of the second count which merely gives particulars does not vitiate the indictment, and it was more advantageous to the defendant to apprise him by the pleadings of the

particulars which the prosecution expected to prove. There being no variance between the two counts nor alleged to be in the evidence, there was no occasion for the prosecution to elect upon which it would proceed, nor was it error for the jury to have rendered a general verdict.

Sixth. The demurrer having been overruled and excepted to the defendant was asked to plead but protested against his being required to do so while his exceptions to the overruling of the demurrer were pending and undecided and, on this objection being overruled, defendant excepted. Exceptions to the overruling of a demurrer have never formally been held to suspend the trial though instances may be cited where this Court has entertained such exceptions before trials on the merits. It will be found that the prosecution has in such cases either consented to this procedure or it has been unnoticed by the Court. The general course has been to have the exceptions noted and proceed with the trial, and this course as we have remarked in several cases recently decided, *Prov. Gov't vs. Smith* (page 178 *ante*), *Prov. Gov't vs. Ah Un* (page 164 *ante*), and *Brown vs. Carvalho* (page 180 *ante*), is the best course and we adhere to it. We see no error in the Court's ordering the trial to proceed.

Seventh. The next point is an exception to the Court's ordering the plea of "not guilty" to be entered, the defendant standing mute and refusing to plead. This was the proper course and followed the statute, it being discretionary with the Court. See Sec. 36, Criminal Procedure Act, p. 348, Compiled Laws.

Eighth. During the trial a witness, Geo. Kuoha, was called for the prosecution, and a foundation having been laid, his testimony and veracity were sought to be impeached by evidence of different statements made by him in the District Court of Honolulu at the preliminary examination. The objection is made that the magistrate read from notes of Kuoha's evidence made by him at the time it was delivered, the evidence being given by Kuoha in Hawaiian and in-

terpreted into English by Thompson, the court interpreter. We find from the evidence transcribed by the stenographer that before the magistrate read any part of his notes, the interpreter, Thompson, was sworn in the case and testified to the jury, of his own recollection, what the witness had said in the district court, and that thereafter the magistrate resumed the witness stand and read such part of the notes of Kuoha's evidence as was requested, which agreed substantially with what the interpreter had testified to. Therefore there is no occasion for us to say what our view would be in case the magistrate had merely read from his notes evidence given to him by an interpreter—the interpreter not being called or testifying.

Ninth. The trial Court admitted as evidence the so-called dying declarations made by the deceased Huntsman, as to who his assailant was and other circumstances. This was objected to, in that it did not appear from the evidence of the witnesses that Huntsman, at the time he made the declarations, realized that he was in a dying condition and spoke under the belief and sanction of impending death. We have examined the transcribed notes of the evidence of H. Von Werthen, Jr., Marshal Ashley and Deputy Marshal Mehrtens as to the circumstances, acts and statements attending these declarations, and are convinced that they justified the Court in receiving the declarations. It is not essential that the declarant shall state formally that he makes the statement under a sense of impending death, but it must satisfactorily appear in some way that they were made under the solemnity of that sanction. Kerr, Homicide, Sec. 412, et seq.

The facts succinctly stated are these. Huntsman received two pistol shots one of which was mortal on Saturday P. M. the 18th March last. He was taken to the hospital and on Sunday evening the 19th at about 11 o'clock the then Marshal Ashley and Deputy Mehrtens with Von Werthen, a friend, appeared in company with the hospital steward at his bedside. He was in a very weak condition and had

frequent lapses into sleep. But when the Marshal told him he had come to take his statement, he roused and made his statement in a weak voice, which statement was taken down in writing. He died early the next morning. The interview lasted about twenty minutes. As it was being concluded Mehrtens shook hands with him and said "good-bye" and told him to rest easy and that he would come and see him in the morning. To which Huntsman—after hesitating a moment said "I don't think you will see me in the morning." To Von Werthen he gave his books and requested him to send his trunk containing his clothing and other personal effects to his mother, giving her name and address in Haley, Idaho. We consider that the trial Court committed no error in holding that these facts showed the belief of Huntsman that his life was rapidly coming to an end, and was right in admitting his statements to the jury as "dying declarations." These declarations are admitted by necessity to prevent murder going unpunished and form an exception to the rule which excludes hearsay, and are not held to be in contravention of the constitutional principle (Art. 7 Const.) that the accused has a right to meet his witnesses face to face. This constitutional ground of objection was the tenth point made by defendant in his bill of exceptions.

Eleventh. The defendant requested the Court to charge that "in order to convict of either murder or manslaughter under this indictment, the jury must be satisfied by the evidence, beyond a reasonable doubt, that the deceased was not only shot and wounded by defendant, but that the medical and surgical attendants of deceased were guilty of no neglect or unskillful treatment of him but for which he might have recovered. If the fact of his death did not result wholly from the act of defendant, apart from and unaided by any neglect or unskillfulness on the part of the medical attendants of deceased, then such death is not to be attributed to defendant, and he should not be convicted of either murder or manslaughter."

This was refused by the Court as was also the next request

which was, "Unless the jury are convinced beyond a reasonable doubt that the death of deceased was in no way attributable to any latent disease or ailment contracted before, and apart from the wounds mentioned in the indictment, they cannot convict defendant of anything more serious than assault and battery herein."

It was proper to refuse these requests. Where the wound is adequate to produce death, the burden does not rest upon the prosecution to show that the medical and surgical treatment of the deceased was skillful, and that his attendants were guilty of no neglect or unskillful treatment, or that the death was wholly occasioned by the act of defendant, and was in no way attributable to neglect or unskillfulness of his medical attendants, or to any latent disease or ailment contracted before and apart from the wounds mentioned in the indictment. The authorities say that "it is immaterial whether the medical treatment was proper or mistaken, if it was employed in good faith and with common knowledge and skill. Thus where the wound is adequate and calculated to produce death, it is no excuse to show that had proper caution and attention been given a recovery might have ensued, for neglect or maltreatment will not excuse, except in cases where doubt exists as to the character of the wound. Kerr, Homicide, Sec. 34, and Stephen's Dig. Cr. L. 156. We do not understand in this case there was any proof of neglect or unskillfulness in the treatment of Huntsman's wounds, one of which was certainly necessarily fatal, or that there was any proof that he had any latent disease.

Twelfth. The Hawaiian jury rendered a written verdict in their own language: "Ua hewa ka mea i hoopiiia no ka lawe ola ma ke degere 2," which is translated: "The defendant is guilty of manslaughter in the second degree." A motion in arrest of judgment was, before sentence, made, founded upon the alleged error in the verdict, and defendant claimed that as the degree of manslaughter was not written out by the jury, but was only indicated by the figure "2,"

the sentence should be for the lowest or third degree of manslaughter. There can be no doubt that the jury intended to find the defendant guilty of the *second* degree of manslaughter, and if the figure had been written out "elua" it would not be properly read "guilty of manslaughter in the degree two," but, as we have said above, "guilty of manslaughter in the second degree." In the Hawaiian language the adjective follows the noun which it qualifies.

We find no ground upon which to grant a new trial, and overrule the exceptions.

*Attorney-General W. O. Smith,* for prosecution.

*C. W. Ashford,* for defendant.